UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (DETROIT)

In re:                                                    Chapter 7

Edward Joseph Young, Jr. and                             Case No. 11-61195
Rosemary Kay Young,
a/k/a Rosemary Kay Duszczyk,                             Hon. Phillip J. Shefferly

          Debtors.
_____/

### OPINION SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTION

#### INTRODUCTION

The Debtors in this Chapter 7 case are husband and wife. The Debtor wife claimed an

exemption in a 2008 Chevrolet Equinox. The Trustee objected to the exemption because the

Equinox is titled to the Debtor husband, not to the Debtor wife. For the reasons explained in this

opinion, the Court sustains the Trustee's objection and disallows the exemption.

#### JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), over which the Court has

jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a).

#### FACTS

In September, 2008, Edward Young and Rosemary Duszczyk ("Debtors") were living

together with their six-month old daughter. At the time, Edward and Rosemary were not married.

Edward had been out of work for about one and one-half years because of an injury he suffered. For

transportation Edward and Rosemary were using a car they had borrowed from Rosemary's parents.

Edward and Rosemary met expenses through the workers' compensation payments that Edward

received plus income Rosemary received from working. But they really needed two cars of their

own, because Edward was pursuing employment that was not nearby to home. Edward then received $65,000.00 as a workers' compensation settlement. This gave Edward and Rosemary the funds to purchase two vehicles. They began looking online and went to numerous dealerships to look at and test drive different vehicles.

On September 11, 2008, Edward and Rosemary went to Moran Chevrolet in Clinton Township, Michigan. Because it was late in the evening and near closing time at the dealership, Edward recalls that they were "kind of rushed." Also, because they had their daughter with them at the dealership, they were somewhat distracted. They had picked out two vehicles they previously test drove, a 2008 Chevrolet Equinox, and a 2005 Pontiac Grand Prix. They paid cash for the vehicles. Their thinking at the time was that Edward would drive the Grand Prix because it got better gas mileage, and Rosemary would drive the Equinox as it was newer and better suited for children. The two vehicles together cost $43,000.00. Edward and Rosemary met with one salesperson from the dealership who handled the paperwork for the purchase of both of the cars.

Neither Edward nor Rosemary remember any conversation that they had with the salesperson about who they wanted to put on the titles to these two cars. They remember only that they were buying the two cars for their family and that they considered the cars to be "ours." Edward testified that there was "no set thing" about who would be on the title for each of the cars. They each remember that they had an "understanding" that Edward would drive the Grand Prix and Rosemary would drive the Equinox, but don't remember telling either the salesperson or each other what should be on the certificates of title. Edward and Rosemary don't remember the topic even coming up in their conversations with the salesperson or each other. When the paperwork was completed, Edward and Rosemary drove the vehicles home.

Before the purchase, Edward called their insurance company and told the agent that they were purchasing the two vehicles. Edward discussed with the agent how to have the insurance issued in the manner that was the cheapest. He discussed both ownership and who would be the primary driver of the vehicles. As it turned out, the rates were the same regardless of who was going to be the owner of the vehicles because both he and Rosemary resided in the same household. The insurance lists Rosemary as the driver of the Equinox.

After the purchase, Edward and Rosemary received the certificates of title in the mail, and placed them with their important papers. They did not look at the certificates of title, or even open the envelopes, until three years later, when they prepared to file Chapter 7. The certificate of title for the Grand Prix, the car that was going to be driven by Edward, describes the owner(s) as: "Rosemary Kay Duszczyk & Edward Joseph Young, Jr." Underneath their names, the certificate of title states: "FULL RIGHTS TO SURVIVOR." The certificate of title for the Equinox, the car to be driven by Rosemary, describes the owner(s) as: "Edward Joseph Young, Jr." Neither Edward nor Rosemary have any explanation as to why the certificate of title for the Grand Prix shows Edward and Rosemary as joint owners with rights of survivor, but the certificate of title for the Equinox just shows Edward as the owner.

In March, 2010, Edward and Rosemary were married. On August 5, 2011, Edward and Rosemary filed their Chapter 7 petition. On schedule B, they list the Equinox as "titled to husband but driven by wife and treated as her vehicle." They also list the Grand Prix as "driven by husband," but do not say anything on schedule B about the title to the Grand Prix. On his schedule C, Edward claimed an exemption in both the Equinox and the Grand Prix. On her schedule C, Rosemary claimed an exemption in both vehicles as well.

-3-

The Trustee objects to Rosemary's claim of exemption in the Equinox, which is specified on her schedule C as being taken pursuant to § 522(d)(5) of the Bankruptcy Code, and described as "titled to husband but driven by wife and treated as her vehicle." The Trustee's objection is based on the fact that the certificate of title for the Equinox shows the owner of the Equinox to be Edward, and does not show Rosemary as having any interest in the Equinox. Rosemary replies by asserting that she does own an interest in the Equinox notwithstanding the fact that she is not on the certificate of title and that she is entitled to exempt her interest in this bankruptcy case. After hearing legal arguments by the Trustee and the Debtors, the Court scheduled an evidentiary hearing. Edward and Rosemary were the only two witnesses. At the conclusion of the evidentiary hearing, the Court took the Trustee's objection under advisement.

**DISCUSSION**

Fed. R. Bankr. P. 4003(b) provides that a party in interest may file an objection to the list of property that a debtor claims as exempt and sets a deadline for such objections. Fed. R. Bankr. P. 4003(c) provides that a party objecting to a debtor's claim of exemption has the burden of proving that the exemption is not properly claimed. The Trustee's objection in this case was timely filed.

As noted, the Trustee objects to Rosemary's claim of exemption in the Equinox because she is not on the certificate of title. Therefore, the Trustee argues, Rosemary does not have a property interest in the Equinox that can be exempted under § 522(d)(5) of the Bankruptcy Code. Rosemary responds by advancing two different arguments. The first argument is that the certificate of title is not dispositive under applicable Michigan law, and that one can be an owner of a vehicle under applicable Michigan law irrespective of the certificate of title. Rosemary argues that she is an owner of the Equinox under Michigan law. Rosemary's second argument is that even if she is not an owner

-4-

of the Equinox, she is nonetheless the beneficiary of a trust pursuant to which Edward holds the Equinox in trust for her. Rosemary asks that the Trustee's objection be overruled.

The starting point to consider the Trustee's objection is § 541 of the Bankruptcy Code, which defines those interests that fall within the definition of property of the estate. Except for certain exceptions not relevant here, § 541(a)(1) provides that property of the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[1] Section 522 of the Bankruptcy Code permits a debtor to exempt from property of the estate certain property that ensures that the debtor has the basic necessities to enable him or her to have the fresh start is one of the goals of a bankruptcy case. See In re Olson, 424 B.R. 770, 773-74 (Bankr. E.D. Mich. 2010) (citation omitted) ("The purpose of personal exemptions in bankruptcy is to ensure that the individual does not emerge from bankruptcy destitute, and to ensure that the individual has the basic necessities to enable him to have the 'fresh start' that is the goal of bankruptcy."). "Exemption statutes should be construed liberally in favor of the debtor." Id. (citation omitted). To determine whether a debtor has an interest in property, whether such property is property of the estate under § 541, and whether such interest may then be exempted under § 522, bankruptcy courts must look to state law as property interests are created and defined by state law. "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because

---

[1] "Although permitting two married individuals to file a joint petition, and conduct a joint bankruptcy case, there is nothing in § 302 of the Bankruptcy Code that automatically makes all of one spouse's property the property of the other spouse as well. Nor is there anything in § 302 to suggest that the filing of a joint case by husband and wife, as two debtors, results in the creation of only one bankruptcy estate under § 541." In re Lindstrom, 331 B.R. 267, 270 (Bankr. E.D. Mich. 2005).

an interested party is involved in a bankruptcy proceeding." <u>Butner v. United States</u>, 440 U.S. 48, 55 (1979).

Rosemary's first argument starts with the definition of "owner" under the Michigan Vehicle Code. Section 257.37 of Mich. Comp. Laws. Ann. defines an "Owner" as any of the following:

(a) Any person, firm, association, or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period that is greater than 30 days.

(b) Except as otherwise provided in section 401a, a person who holds the legal title of a vehicle.

(c) A person who has the immediate right of possession of a vehicle under an installment sale contract.

Rosemary points to this statute as demonstrating that ownership of a vehicle does not necessarily flow only from the certificate of title and that there may be other facts upon which an individual can still be found to be an owner even if not shown as an owner on the certificate of title. Rosemary does not assert that she is an owner because she qualifies under subsection (a) of this statute as a person renting a vehicle or having exclusive use of a vehicle under a lease for more than 30 days. Nor does she argue that she qualifies as an owner under subsection (b) of this statute as a person who holds legal title. Nor does she argue that she is an owner under subsection (c) of this statute as a person who has an immediate right of possession of a vehicle under an installment sale contract. Instead, Rosemary reasons that this statute shows that more than one person can be an owner of a particular motor vehicle and that a person need not hold the legal title to be an owner of a vehicle. Rosemary then turns to Michigan case law that supports this reasoning by holding in some cases that an individual may be an owner of a vehicle even though not the holder of legal title and not otherwise within one of the specific subsections of Mich. Comp. Laws Ann. § 257.37.

-6-

The strongest case in support of Rosemary's first argument is Twichel v. MIC General Insurance Corp., 676 N.W.2d 616 (Mich. 2004). The issue in that case involved whether an individual was an owner of a vehicle for purposes of a provision in the Insurance Code in Michigan. The individual in question had purchased a vehicle, paid half of the sales price, and was to pay the remainder at a later date. Id. at 618. The individual took possession of the vehicle, but the title was not signed over because the payment had not been completed. Unfortunately, the individual died in an accident five days later, and the personal representative of the individual's estate brought an action against the insurance company seeking personal protection insurance benefits and uninsured motorists' coverage. The applicable statute in Michigan, Mich. Comp. Laws Ann. § 500.3113(b), precluded owners of uninsured vehicles from receiving such benefits. The issue then was whether the decedent was an owner of the vehicle who would be precluded from receiving such benefits or not. Id. at 618-19. The trial court and the appellate court found that the decedent was not an owner of the vehicle and, therefore, the decedent's estate was entitled to recover the benefits from the insurance company. The Michigan Supreme Court reversed. The court construed both the Michigan Vehicle Code and the Insurance Code, and held that the decedent was an owner of the vehicle for purposes of Mich. Comp. Laws Ann. § 500.3101(2)(g)(i) even though the title was still in the name of the seller. Id. at 620-21. Accordingly, the decedent's estate was not entitled to recovery from the insurance company. Id. at 622.

Twichel does hold that the certificate of title is not dispositive, and that one may be an owner of a vehicle notwithstanding the fact that such individual is not shown as the owner on the certificate of title. But Twichel does not help Rosemary. In Twichel, the decedent had paid half of the purchase price for the vehicle, with the intention to take the title once the balance was paid. The Michigan Supreme Court described the arrangement between the decedent and the seller as a

-7-

"permanent transfer of ownership of the vehicle and it contemplated that the deceased would have exclusive use of the truck permanently." Twichel, 676 N.W.2d at 620. There is no evidence of any such arrangement in the case before the Court. The evidence shows that Edward purchased the Equinox entirely with his own money. There is no evidence that Edward and Rosemary made some agreement for him to transfer ownership of the vehicle to her. The most that can be said about the evidence in this case is that Edward and Rosemary had an unspoken "understanding" when they went to purchase the Equinox and Grand Prix in 2008 that the cars would be "ours." But there is no evidence in the record that they had any conversations either with each other or with the salesperson who prepared the paperwork for the issuance of the certificates of title that would corroborate the existence of any agreement or arrangement between them that the Equinox was to be owned by Rosemary or transferred by Edward to Rosemary. The Court does not quarrel with Rosemary's citation to Twichel for the proposition that an individual can be an owner of a vehicle, even if not on the certificate of title. The problem for Rosemary here is that there is simply no evidence to support her assertion that she is an owner of the Equinox. The Equinox was paid for by Edward, it is titled to Edward, and there is not a single shred of evidence to demonstrate the type of agreement to transfer that was present in Twichel.

Rosemary also relies on In re Sielaff, 164 B.R. 560 (Bankr. W.D. Mich. 1994). In Sielaff, the debtor wanted to purchase a car, but could not do so without a co-signer because he was not creditworthy. Id. at 562. The bank that financed the car required that the car be in the debtor's father's name even though it knew that the car was being purchased for the debtor. Id. at 563. The debtor at all times had exclusive use and possession of the vehicle after its purchase. Most of the payments were made by the debtor. Some were made by his father. Initially, the debtor's father maintained the insurance coverage, but later it was changed to the debtor's name. When payments

were late, the bank sent the late notices to the debtor. When the debtor filed bankruptcy, the payments were delinquent by two months. Id. at 563-64. The bank was listed as a creditor on the debtor's schedules. The bank repossessed the car after the bankruptcy was filed and indicated to the debtor that the debtor's bankruptcy was irrelevant because the debtor was not on the title or on the loan. The debtor filed a motion to hold the bank in contempt for repossessing the car in violation of the automatic stay. Id. at 565. One of the issues in the case was whether the debtor had any property interest in the vehicle.

The Sielaff court began its analysis by looking to Michigan law, including the Michigan Vehicle Code. Id. at 565-66. Ultimately, the court concluded that it was unnecessary to determine whether the debtor was an owner of the vehicle under the Michigan Vehicle Code because there were other facts and circumstances that led the court to find that the debtor had an *equitable* interest in the vehicle at the time that the bankruptcy case was filed and at the time the vehicle was repossessed by the bank. Id. at 567. The court pointed out that the debtor made approximately three-fourths of the payments on the vehicle, and that the insurance policy on the vehicle listed the debtor as both the insured and the regular driver of the vehicle. However, what the court found "most important" was the fact that the bank "admitted awareness and acceptance of the Debtor's arrangement with his father for payment and possession of the vehicle." Id. The court then held, "on the basis of the specific facts of this particular matter that the Debtor had an equitable interest in the vehicle as of the commencement of the case." Id. at 568.

There are a number of factual differences between Sielaff and this case, two of which are especially significant. First, the Sielaff case involved a request for damages because of a stay violation by a bank that had knowingly participated in the arrangement for the debtor's father to purchase a vehicle for the debtor. The Sielaff court did not determine the debtor's property interest

in the vehicle for purposes of considering the debtor's claim of exemption. Second, the <u>Sielaff</u> opinion emphasized that the "most important" fact in that case was that the bank that repossessed the vehicle in violation of the automatic stay knew of the arrangement to put the vehicle in the debtor's father's name and participated in the documentation of the transaction to accomplish it. The <u>Sielaff</u> court then took pains to explain that its holding was made based on the "specific facts of this particular matter."

The Court agrees with <u>Sielaff</u>'s holding that a debtor may have an equitable interest in a vehicle even when the debtor is not shown on the title of the vehicle. But that does not help Rosemary because the other equitable considerations that are present in <u>Sielaff</u> are not present here. Unlike <u>Sielaff</u>, Rosemary did not pay for the Equinox. Edward and Rosemary did not attempt to have the Equinox titled to Rosemary. Nor is there any evidence that the dealership in this case, in contrast to the bank in <u>Sielaff</u>, collaborated in any respect with the Debtors in determining who should be shown as the owner on the Equinox certificate of title.

Rosemary cites additional cases in Michigan holding that a certificate of title is not dispositive and that an individual can still be an owner of a vehicle in Michigan, even if not shown on the certificate of title. Even accepting that proposition of law, all of those cases have facts that are distinguishable from this case. None of the cases cited by Rosemary persuade the Court that under Michigan law Rosemary is an owner of the Equinox on the facts of this case.

In this case, the facts are straightforward and undisputed. Edward paid the entire purchase price for the Equinox before he and Rosemary were married. Edward is shown on the certificate of title as the sole owner of the Equinox. The Debtors testified that they do not have any idea why Edward is shown as the owner of the Equinox and they are both shown as joint owners of the Grand Prix. There is no evidence that Edward and Rosemary ever discussed with each other how the

certificates of title for either vehicle should read. Nor is there any evidence that they ever discussed the certificates of title for either vehicle with the salesperson, let alone instructed the salesperson how to fill out the certificates of title. There is no evidence that the salesperson made a mistake of any kind in filling out the paperwork. The evidence shows that the Debtors did not even check the certificate of title for the Equinox when it was mailed to them, but only looked at it three years later when they assembled their documents for filing their Chapter 7 bankruptcy case. Even then, when they first looked at the certificate of title for the Equinox, they were "not surprised" to see that it was in Edward's name and not Rosemary's name. The only evidence adduced by the Debtors to support their contention that Rosemary is an owner of the Equinox is their testimony that she drove it, the insurance policy showed her as the driver, and that the Debtors "understood" both the Grand Prix and the Equinox to be "our" family's cars. That is not enough evidence to overcome the statutory presumption that Edward, as the person shown on the certificate of title, is the owner of the Equinox. See Mich. Comp. Laws Ann. § 257.37(b) (defining "owner" as including "a person who holds the legal title of a vehicle"). See also Guijosa v. Kaylor, No. 218534, 2000 WL 33394520, at *2 (Mich. Ct. App. Dec. 19, 2000) (finding that "the presence of defendant's name on the certificate of title for the vehicle at the time of the accident created a presumption that defendant was an owner of the vehicle") (citations omitted); Kelly v. Citizens Mut. Ins. Co., 172 N.W.2d 537, 539 (Mich. Ct. App. 1969) (noting under the owner's liability statute, "courts have uniformly held that the owner is the person in whose name the automobile is registered with the secretary of state and who is listed on the certificate of title"). Nor is it enough evidence to show that Rosemary is also an owner of the Equinox either under the Michigan Vehicle Code, or under any of the Michigan law cited by Rosemary.

Rosemary's second argument is that even if she is not an owner of the Equinox, she still has an interest in it that she may exempt under § 522(d)(5) of the Bankruptcy Code because she is the beneficiary of a trust. In support of this argument, Rosemary cites a number of bankruptcy court decisions that have found the existence of a trust regarding a vehicle or other personal property that created a beneficial ownership in such vehicle or personal property in favor of an individual.

Rosemary does not contend that there was a written trust document regarding the Equinox. However, under Michigan law, a trust may still be established even if not in writing. Recently, the Bankruptcy Court for this district summarized Michigan law regarding the establishment of oral trusts in personal property as follows:

> Under Michigan law, an express trust may be established orally, at least with respect to personal property. Osius v. Dingell, 134 N.W.2d 657, 660 (Mich. 1965) (citations omitted), cited by both parties, held that "a valid trust in personalty may be created by parol." But "[t]o establish a trust of personalty, [the] parol evidence must be clear and satisfactory and find some support in the surrounding circumstances and conduct of the parties." Id. (citation omitted). "It is a general principle of trust law that a trust is created only if the settlor manifests an intention to create a trust, and it is essential that there be an explicit declaration of trust accompanied by a transfer of property to one for the benefit of another." Id. (citations omitted); see also Children of Chippewa, Ottawa and Potawatomy Tribes v. Regents of Univ. of Michigan, 305 N.W.2d 522, 526 (Mich. Ct. App. 1981) (same); see generally Scarney v. Clarke, 275 N.W. 765, 767 (Mich. 1937) (citation and internal quotation marks omitted) ("To constitute an express trust there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created.").

Gold v. Marquette Univ. (In re Leonard), 454 B.R. 444, 451 (Bankr. E.D. Mich. 2011).

The evidence in this case does not demonstrate that Edward held the Equinox in trust for Rosemary. The Debtors testified that they had an "understanding" that the Grand Prix and the Equinox were both "ours," and were purchased "for the family." But neither of them testified what that "understanding" was based on. Both of them testified that they never spoke with each other or anyone else about the ownership of either the Equinox or the Grand Prix. Neither of them testified

-12-

that there was ever an explicit declaration of trust by Edward. Neither of them testified that Edward ever expressed in any way an intention to create a trust. Rosemary argues that it is not necessary to the establishment of an oral trust that there be "an incantation of the magic word 'trust'." That is true. But, there must still be an explicit declaration of trust. There was no declaration of any kind in this case. Not one statement.

Without such explicit declaration, the case law in Michigan requires that there be "'circumstances which show beyond reasonable doubt that a trust was intended to be created.'" In re Leonard, 454 B.R. at 451 (quoting Scarney v. Clarke, 275 N.W. 765, 767 (Mich. 1937)). There are no circumstances in this record that meet that standard. The Debtors' testimony, while candid and sincere, is hopelessly vague when it comes to proving the facts necessary to establish the elements of a trust. Aside from the absence of a statement declaring a trust, there is no evidence of any conduct by Edward that could reasonably be construed as manifesting an intention to create a trust. Edward admits there was "no set thing" regarding the ownership of the Equinox. While both Debtors refer to an "understanding," neither of them testified to any oral statement, or any other facts and circumstances, upon which their "understanding" was based. The only circumstances they identified were that they were purchasing the cars "for their family." That is not enough under controlling Michigan law regarding the necessary elements of an express oral trust.

Rosemary cites a number of bankruptcy court decisions finding in the particular facts and circumstances of those cases the existence of a trust relationship. See Drown v. Hill (In re Phillips), 437 B.R. 836 (Bankr. S.D. Ohio 2010); In re Ward, 300 B.R. 692 (Bankr. S.D. Ohio 2003); In re Amos, 201 B.R. 184 (Bankr. N.D. Ohio 1996). None of those cases construe Michigan law, which governs her assertion of a trust in this case. Those cases construe Ohio law. Further, those cases are easily distinguishable from the facts in this case. The evidence in this case is simply not strong

-13-

enough to prove the facts needed to show the elements of an express oral trust in Michigan. Once again, the Court does not quarrel with Rosemary's legal theory. Rosemary's problem is the lack of evidence to support the application of the legal theory in this case. There was no trust for the Equinox.

## CONCLUSION

The Trustee's objection is based on the fact that the title to the Equinox is in Edward's name, not Rosemary's. That is sufficient for the Trustee to meet her burden of proof. Rosemary has not come forward with sufficient evidence to overcome the Trustee's evidence. The testimony in the record does not establish either that Rosemary has an ownership interest in the Equinox under Michigan law or that there was an express oral trust creating a beneficial interest in the Equinox in her favor. With the benefit of hindsight, filing bankruptcy three years after purchasing the Equinox, it is easy to understand why the Debtors may now wish to recast how the Equinox was owned. It would be more advantageous to the Debtors in selecting their exemptions if Rosemary owns the Equinox. But the evidence proves that she does not. Because she does not have an ownership interest in the Equinox, she cannot claim it as exempt. The Trustee's objection must be sustained. The Court will enter a separate order consistent with this opinion.

.

Signed on March 20, 2012

```
     /s/ Phillip J. Shefferly
   Phillip J. Shefferly
   United States Bankruptcy Judge
```

-14-